**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

LATIA JONES,                                  }
                                              }
              Plaintiff,                      }
                                              }
VS.                                           }           CIVIL ACTION NO. H-07-1355
                                              }
SUPERIOR PROTECTION SERVICES, INC.,  }
a/k/a SUPERIOR SECURITY SERVICES,    }
                                              }
              Defendant.                      }

**OPINION & ORDER**

Pending before the court in this Title VII gender discrimination, sexual harassment and retaliation case is Defendant's motion for summary judgment (Doc. 12). Plaintiff has filed a response (Doc. 19), to which Defendant has replied (Doc. 20). For the reasons explained below, the court ORDERS that Defendant's motion is GRANTED on all counts.

**I.          Background & Relevant Facts**

Plaintiff Latia Jones ("Jones") filed suit against her former employer, Defendant Superior Protection Services Inc. ("Superior"), alleging several violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq*. Doc. 1 at 3-4. In October 2005, Superior hired Jones as a security guard. Doc. 19 Exh. 12 at ¶2. Superior contracts with the Federal Protective Service Division of the Department of Homeland Security ("Federal Protective Service") throughout Texas and Arkansas and provides guards to the following federal buildings in Houston, Texas: U.S. Customs Office, Mickey Leland Building, Alliance Towers, and the FEMA Disaster Recovery Center. Doc. 19 Exh. 7 at ¶3.

Jones alleges that, through November and December 2005, and, later, in January 2006, Clinton Davis ("Davis"), a colleague working in the same building, made inappropriate comments to her.  Doc. 19 at 4.  These comments included: "I like a woman your size," "Your pants look like you have a penis," "Where does your man work at. I don't believe you have a man."  Doc. 19 Exh. 6 at 1.  Furthermore, Jones alleges she found it "very uncomfortable" to work with Davis because he would not respond to communications regarding work from her.  *Id*. Jones, however, acknowledges that Davis was not her supervisor but had the status of her co-worker.  *See*, Doc. 12 Exh. 3 at page 50.

Jones contends that, in November and December 2005, she complained informally by phone to her Area Manager, Major Johnson ("Johnson").  Doc. 12 Exh.3 at 51. Johnson interviewed Jones and Davis and took no action based on the oral complaints. *Id.* According to Jones, Johnson gave as a reason that it was "my word against his." *Id*.

On January 17, 2006, Jones filed her first written complaint about Davis's conduct.  Doc. 19 Exh. 7 at ¶15.   Initially, Jones only complained of a comment Davis made that same day.  *Id*. at ¶15-16.  Martyn Hammond ("Hammond"), President and owner of Superior, became aware of the January 17 complaint and requested that Johnson interview both Jones and Davis.  *Id*.  Before Superior took action, Jones complained again that same day, this time informing Hammond that Davis had not only made inappropriate comments on January 17, 2006 but that he had also previously made inappropriate comments in November and December 2005.  *See*, Doc. 19 Exh.7 at page 4-5 ¶16-18; Doc. 12 Exh. 3 at 50-58; Doc. 19 Exh. 6 at 1.  Consequently, Hammond interviewed Davis on January 25, 2006, at which time Davis admitted to calling Jones a derogatory name back in November or December, while denying making any such comments to her in January.  *See*, Doc. 19 Exh. 7 at ¶17.   At this point, Hammond made the decision to

transfer Davis to another building so that Jones and Davis would no longer work together.  *Id*. at ¶18; Doc. 12 Exh. 3 at 59.  After January 17, 2006, Jones admits that Davis had no further inappropriate contact with her.  *See*, Doc. 12 Exh. 3 at 58.

In April 2006, Superior required that Jones qualify to use her firearm, to ensure compliance with the regulations imposed by the federal building where she now worked.  Doc. 19 Exh. 16 at 3.  When she attempted to qualify at the gun range, Hammond counted her shots, failed her, and instructed her that, as a result, she was terminated.  See. Doc. 19 Exh. 16 at 3.  Jones was preparing to hand in her equipment when Superior called and gave her a second opportunity to take the firearms test.  *Id*.  At Jones' second test, on April 7, 2006, Hammond did not grade Jones.  *Id*.  Jones passed this test.  *Id*.

Under the terms of the contract with Superior, Federal Protective Service appointed a Security Manager to each federal building to oversee Superior's guards.  *See*, Doc. 19, Exh. 7 at ¶5.  Under the contract, the Security Manager had the power to appoint lead officers and to require Superior to remove guards from the federal building if their work was inadequate.  *Id*.  In the FEMA Disaster Recovery Center ("FEMA building"), Tom McAllister ("McAllister") served as Security Manager.  *Id*.  McAllister, on behalf of the Federal Protection Service, appointed Jones lead officer in that building.  *See*, Doc. 12 Exh. 3 at 39.  According to Jones the position of lead officer only meant that she had to set the alarm in the building and that she had an access card.  *Id*.  It did not mean that Jones was overseeing the other guards.  *Id*.

On September 8, 2006, McAllister complained to Hammond that Jones failed to set the alarm.  *See*, Doc. 19, Exh. 7 at ¶7-8.  McAllister also complained about all of the officers' performance in general.  *Id*.  Hammond queried Jones about these lapses.  *Id*. at ¶9-10.  Jones alleges she explained to Hammond she could not set the alarm because it was broken.  Doc. 12

Exh. 3 at 62.  Jones also requested not to be lead guard any longer.  *Id*. at 64.  She served as lead guard until David Brown ("Brown") was transferred to the FEMA building and assumed the lead guard position.  *Id*.

Sometime after September 8, 2006, Dorothy Bass ("Bass") replaced McAllister as the new Security Manager in the FEMA building. Doc. 19, Exh. 7 at ¶12.  On October 17, 2006, approximately a month after McAllister complained about Jones, Bass sent a fax to Superior asking that Jones be removed from the FEMA building.  Doc. 19, Exh. 7 at ¶12; Doc. 12 Exh. 6 at 1.  In the fax, Bass advised that she had told Jones not to abandon her post without securing cover but that Jones had continually done so.  Doc. 12 Exh. 6.  At this point, Hammond alleges, that his "hands were tied" and Superior had to terminate Jones.  Doc. 19 Exh. 7 at ¶13.

On the date her employment was terminated, male supervisors Billy Petty ("Petty") and David Brown took Jones to a room.   Doc. 19 Exh. 1 at 85-90, 97.  Petty and Brown made physical contact with her to try and remove her security guard equipment, including her gun, her ASP baton and her 24 hour clearance for the building.  *Id*.  It is Superior's policy that officers return equipment, including the gun and baton, within five days upon termination of service. Doc. 19 Exh. 15 at 1-2.  When Petty seized Jones' credentials off her chest, he accidentally made contact with her breast.  *Id*.; Doc. 12 Exh.3 at 66-67.  Jones tried to leave the room, but Brown stepped in her way and blocked the exit.  *Id*. at 65; Doc. 19 Exh. 1 at 85-90.  Jones began screaming for help, and Brown and Petty let her go.  *Id*. at 66.  Jones subsequently wrote a letter to the Federal Protection Service complaining of Brown's and Petty's behavior.  *Id*. at 68.

## II.        Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor.  *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v.*

*Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."   W*ebb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may

also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1988).

### III.      Analysis

#### A.  Sex Discrimination Claim

Jones makes a claim of gender discrimination based on circumstantial evidence. It is therefore subject to the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Under this framework, the initial burden lies with the plaintiff to plead a *prima facie* case of gender discrimination. *Davis*, 383 F.3d at 316. To establish a *prima facie* case of gender discrimination, Jones must show the following: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were more favorably treated. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).

If Jones establishes a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to Superior to articulate a legitimate, non-discriminatory reason for its employment action. *See Price v. Federal Express Corp.*, 283 F.3d

715, 720 (5th Cir. 2002).  Superior's burden is satisfied if it produces evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action."  *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original).

If Superior articulates a reason that can support a finding that its actions were nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's *prima facie* case drops out."  *Id.* (citing *Hicks*, 509 U.S. at 510-511).  Jones must then introduce evidence creating a jury question as to whether Superior was motivated by discriminatory animus.  A plaintiff meets this burden by showing either (1) that defendant's articulated reason was pretextual (pretext alternative), or (2) that plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative).  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Although the intermediate evidentiary burdens shift back and forth, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).  In determining whether summary judgment is appropriate, the court considers the strength of the plaintiff's *prima facie* case, the probative value of proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may properly be considered for summary judgment.  *Id.* at 148-49.

Jones has met the first three prongs of her prima facie case in that she is female, she was qualified for her position, and her employment was terminated.  The fourth and final prong requires Jones to prove that she was replaced by someone outside of the protected class, or that similarly-situated employees outside of the protected class were more favorably treated.

Since the Court decides this case on this issue of pretext, we assume, without deciding, that Jones has met this prong of the *prima facie* case.  We have assumed that Jones has met her initial burden; the burden of production now shifts to Superior to provide a "legitimate, nondiscriminatory reason" for concluding Jones' employment. In order to meet its burden, Superior must provide both "clear and reasonably specific reasons" for its actions. *Okoye*, 245 F.3d at 513.

Hammond, the President of Superior, claimed that his "hands were tied" and that he had to discharge Jones when Bass, the Federal Protection Service Security Manager, required that Superior remove Jones from the FEMA building.  See, Doc. 19 Exh. 7 at ¶13.  Bass ordered that Jones be removed because Jones had abandoned her post as a security guard without securing a replacement on several occasions.  Abandoning one's post as a security guard is a serious charge.  Superior has proffered sufficiently clear and specific evidence for not retaining Jones and, therefore, has met its burden of production.

Jones must now raise a genuine issue of material fact that Superior discriminated against her.  *Okoye*, 245 F.3d at 513. (5th Cir. Tex. 2001).  Jones may meet this threshold by proving that an issue of material fact exists through circumstantial evidence, i.e., by demonstrating that an issue exists that Superior's proffered reason is a pretext for discrimination, or by providing direct evidence of discrimination.  *See id*.; *Hall v. Gillman Inc.,* 81 F.3d 35, 37 (5th Cir.1996).  As the Supreme Court acknowledged in *Reeves*, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false" may be sufficient to infer discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*  530 U.S. 133, 148, 120 S.Ct. 2097, 2109 (2000). The Supreme Court has also made clear, however, that "instances [exist] where, although the plaintiff has established a prima facie case and set forth

sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

Jones alleges that she suffered discrimination because similarly-situated males were transferred to other buildings instead of being discharged. "To establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under 'nearly identical' circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by . . . other employees." *Okoye*, 245 F.3d at 514. Jones provides a list of ten male employees, including Davis, who were moved to other buildings. Doc. 19 at 9. Jones fails, however, to argue the circumstances under which they were transferred. Her affidavit, on the other hand, does provide some of the circumstances, and yet, as set forth below, none are 'nearly identical' to hers.

One male guard, Davis, was transferred because Jones complained he harassed her. Doc. 19 Exh. 16 at 5-6. Two male guards were transferred after a supervisor "wrote [them] up." *Id.* One male guard was transferred after a complaint he threatened to kill someone. *Id.* One male guard was transferred after a complaint that he sexually harassed a government employee in his building. *Id.* One male guard, Cuevas, was transferred for abandoning his post, like Jones. *Id.* In Cuevas' case, however, he only abandoned his post once, whereas Jones abandoned her post several times and was already on her last warning for poor performance. Furthermore, while Bass reported both Cuevas and Jones to Superior for abandoning their post, the record shows only that in Jones' case, Bass requested that Jones be removed from the building. In fact, Bass eventually retracted her complaint about Cuevas abandoning his post, claiming she was mistaken. *See* Doc. 19 Exh. 16 at page 4-5.

Leaving Cuevas to the side for now, the other male guards were not more favorably treated in 'nearly identical' circumstances.  As the Fifth Circuit laid out the standard in *Okoye*, where employees are disciplined for different policy violations, the circumstances are not 'nearly identical' as a matter of law.  *Okoye*, 245 F.3d at 514-15.  In *Okoye*, the plaintiff, a physician, argued that three other physicians were more favorably treated by the employer in the decision not to terminate the latter, circumstantially demonstrating race discrimination.  *Id*.  The Fifth Circuit held that the plaintiff failed to demonstrate 'nearly identical' circumstances because, of the three other physicians, none had allegedly assaulted a co-worker as the employer was claiming the plaintiff had done.  *Id*.  Significantly, the Fifth Circuit imposed a strict analysis of 'nearly identical' and did not engage in comparing the seriousness of the disciplinary violations of the other three physicians who had slept on the job, falsified records, performed superficial exams, and been unresponsive to nursing needs.  *See id.*,  *Perez v. Tex. Dep't of Crim. Justice* 395 F.3d 206, 212-214 (5th Cir. 2004) (Finding incorrect jury instructions telling jury to consider comparative seriousness of culpable conduct to determine if plaintiff was 'similarly situated' because all, not just some, circumstances must be 'nearly identical').  In the instant case, none of the male guards, apart from Cuevas, abandoned his post. They were transferred for other policy violations.  Therefore, the circumstantial evidence as it pertains to these guards can be disregarded.

Furthermore, the evidence as it pertains to the other male guards apart form Cuevas can be disregarded because of another significant distinction, that their disciplinary violations were not brought to the attention of Superior by Superior's main client, the Federal Protection Service.  In finding that circumstances are not 'nearly identical', the Fifth Circuit has drawn a distinction between culpable conduct that is brought to the attention of the employer by

clients and may lead to "significant loss of business" and culpable conduct that is merely reported internally.  *Bryant v. Compass Group USA, Inc.,* 413 F.3d 471, 478 (5th Cir. 2005).  In each federal building, Superior's client, the Federal Protection Service, oversaw Superior's services using a Security Manager.  Bass, the Security Manager for the FEMA building, had brought Jones' transgressions – her repeated abandoning of her post – to Superior's attention.  Superior had heard complaints about the other male guards, apart from Cuevas, internally.  As the Fifth Circuit pointed out in *Bryant*, this differentiates the conduct at issue because Superior was under considerable pressure to keep the Federal Protection Service satisfied with their services and, thus, Superior had to pay special heed to complaints about their guards coming directly from a Security Manager.[1]

This brings us to whether the remaining guard, Cuevas, provides enough proof of disparate treatment to resist summary judgment for the employer.  He does not.  Bass took the time to fax Hammond, President of Superior, to demand that Jones be removed from the FEMA building.  In Cuevas' case Bass admitted she had been mistaken and retracted a complaint about Cuevas abandoning his post.  There is no equivalent proof in the record that Bass faxed Hammond concerning Cuevas or demanded Cuevas be removed from the building (though Superior did transfer him).  Thus, there is no proof that Hammond's main client had expressed as strong a disapproval of Cuevas as it did of Jones.  Jones is also on a different footing from

---

[1]     Hammond claims in his affidavit and Superior argues that Superior had to terminate Jones once Bass asked she be removed from the building.  Jones conceded in her deposition that she would be removed from the "federal contract" if Bass requested it.  Doc. 12 Exh. 3 at page 79.  Superior, however, had several federal contracts and it seems the simplest interpretation of Jones' admission is that she would be removed from the contract on the FEMA building, where she presently worked, but could still have been transferred to another building.  Although, therefore, the Court is not persuaded that Bass had the authority to mandate discharge and, therefore, that it remained in Superior's discretion, common sense suggests it was a reasonable business decision by Superior not to "pass the buck."  If Superior sent Jones to another federal building under another federal contract to be supervised by another Federal Protection Service Security Manager and Federal Protection Service discovered that Bass had already requested she be removed for serious violations, Superior would run the risk of displeasing its client.

Cuevas because the evidentiary record only shows Cuevas abandoned his post once whereas Bass' fax complained that Jones abandoned her post several times.

Bolstering this conclusion is the fact Hammond had received previous serious complaints from McAllister, Bass' predecessor as Security Manager, regarding Jones. According to McAllister, Jones had failed to set the alarm and had failed to ensure that the other officers followed policy, her responsibility as lead officer.  Hammond makes it clear that the decision to terminate Jones' was not just based on Bass' fax complaining of her abandoning her post on several occasions, but also her "continuing poor performance," which was referred to in the prior complaint from McAllister.  *See* Doc. 19 Exh.  7 at ¶13-14.

Jones admits she did not set the alarm but states she explained to Hammond that she could not because it was broken.  Jones further argues that she asked to no longer serve as lead officer because she did not wish to be responsible for the shortcomings of the other officers. Superior, however, may well have disbelieved her excuse concerning the alarm and chosen to hold her responsible for the behavior of the other officers while she was lead officer.  Moreover, management does not have to make proper decisions, only non-discriminatory ones.  *See Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir. 1991) ("even an incorrect belief that an employee's performance is inadequate constitutes a legitimate non-discriminatory reason" for termination).  Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, or . . . to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988).

Jones also alleges she suffered gender discrimination not just in the fact of her termination but in the manner of her termination.  Officers Petty and Brown used some physical contact to remove her officer credentials and disputed ownership of Jones' gun, which was in

fact Jones' own and not Superior's.   Jones argues that another guard, who was dismissed for sleeping at his post, was given the five day maximum allowable to return his equipment.   Thus, Jones argues that because Brown and Petty acted against company policy in her case this is further proof of discrimination against her.

Violations of company policy, however, are not *de facto* proof of sexual discrimination.   Furthermore, Superior did not violate its own policy in Jones' case because company policy gave the employee a five day maximum to return his or her equipment *or face liability for the equipment* and in no way dictated how soon the employer could decide to collect the equipment.   Doc. 19 Exh. 15.  at 1.   The employer must have discretion to choose which employee might pose a security risk after termination and from whom it might be wiser to collect security credentials and a gun immediately.   Moreover, as indicated above, to show disparate treatment Jones had to provide proof of other employees in identical circumstances.   The other guard slept at his post and thus may have been considered by Superior to have less of an active disregard for security protocols than Jones, who abandoned her post several times.

Thus, there are a host of differentiating factors between Jones and the officers she claims were more favorably treated than she.   *Perez,* 395 F.3d at 212-214 (Finding all circumstances leading up to termination must be 'nearly identical').   Her disparate treatment claim, consequently, fails as a matter of law.

B.   Sexual Harassment Claim.

Jones argues that she was sexually harassed by Davis and Superior is liable for not taking remedial action after she complained to Superior of this sexual harassment.   In order for Superior to be liable for sexual harassment based on Davis' actions, Jones must prove that: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) based

upon her sex; (4) which affected a term, condition, or privilege of her employment; and (5) that her employer knew, or should have known, of the harassment and failed to take prompt remedial action.  *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995) (citing *Jones v. Flagship International*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065 (1987)).

       Superior fails to make the argument in their motion for summary judgment that Davis' actions did not constitute harassment.  Doc. 12; Doc. 20.  Instead Superior focuses its motion for summary judgment on its argument that it took prompt remedial action.  *Id.*

       "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 402 (5th Cir. 1993). "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Skidmore v. Precision Printing and Packaging, Inc.,* 188 F.3d 606, 615 (5th Cir. 1999) (quoting *Jones*, 793 F.2d at 719-20). What constitutes prompt remedial action depends on the facts of the case; "not every response by an employer will be sufficient to discharge its legal duty." *Id*. at 615 (quoting *Waltman*, 875 F.2d at 479). "Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Id*. at 615-16.  The Fifth Circuit has often found that an employer took prompt remedial action as a matter of law.  *Hockman v. Westward Communs.*, LLC, 407 F.3d 317, 329 (5th Cir. 2004).

       Superior argues that, as the employer, it took prompt remedial action by transferring Davis to another building once it was made aware of Jones' allegations.  Jones contends that Superior, instead of taking remedial action, appointed her as lead officer of the guards in the FEMA building so as to place blame on her for the other guards' misconduct.

There must be evidence that Superior failed to take prompt remedial action upon learning of the alleged harassment. *Jones*, 793 F.2d at 719-20. Eight days after the first written complaint of harassment, within two months of the derogatory comments, and, most importantly, immediately upon admission by the alleged harasser that comments were made, Superior transferred Davis to work in a different building than Jones.  The Court finds Superior acted as well as it could in the circumstances, and, thus, promptly as a matter of law.

Lastly, Jones argues that by promoting her to lead officer in a predominantly male environment, Superior failed to take remedial action for the sexual harassment she suffered.  This claim seems more properly understood as a retaliation claim, of which more below.  Assuming *arguendo* that this claim is part of a sexual harassment claim, the Court finds it insufficient as a matter of law to resist summary judgment on behalf of the defendant.  The proposition that Jones' promotion after she complained of harassment demonstrates insufficient remedial action is questionable.  Jones argues that the position came with no title or raise and was designed to allow Superior to hold her accountable for the deficiencies of the other officers.  Jones only has highly circumstantial evidence for this supposed subterfuge.  Jones presents as evidence a letter written by McAllister, the then Security Manager, that officers were having difficulty working as a team.  *See*, Doc. 19 Exh. 6.  Jones also presents testimony by another officer that the other officers were unhappy with Jones, both professionally and personally.  Doc. 19 Exh.1 at 127. Jones argues, based on this alone, that she would inevitably be a controversial choice as lead officer and, thus, that Superior had ill intent in placing her in this position.

The Court, however, without weighing the sufficiency of this evidence, or of the correctness of Jones' premise, finds Superior could not have failed to take appropriate action in promoting Jones because Superior did not in fact promote Jones, rather the Federal Protection

Service made Jones lead officer.  As Jones states in her deposition, McAllister, the Security Manager for the FEMA building at that time, on behalf of the Federal Protection Service, appointed Jones lead officer.  *See*, Doc. 12 Exh.3 at page 39.  Thus both Jones' arguments fail. Consequently, Superior is granted summary judgment denying the sexual harassment claim.

### C.  Retaliation Claim

Title VII forbids an employer from "discriminat[ing] against" an employee because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation.  42 U.S.C. § 2000e-3(a).

Plaintiffs with circumstantial evidence of retaliation must also proceed under the *McDonnell Douglas* burden shifting framework.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).  Under this framework, Jones may create an inference of discrimination by showing (1) that she engaged in an activity protected by Title VII; (2) that she suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action.  *Id*. at 610; *see also Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001).  If the plaintiff is successful, an inference of discrimination is created and the burden shifts to the defendant to articulate a non-retaliatory reason for the adverse employment decision.  If the defendant articulates a legitimate reason, then the inference of discrimination falls away and plaintiff is left with the burden of proving that defendant's articulated legitimate reason was a pretext for retaliation.  *Keelan v. Majesco Software Inc.*, 407 F.3d 332, 341 (5th Cir. 2005).

In determining whether an adverse employment action was taken as a result of retaliation, district courts must focus on the final decision maker.  *Ackel v. Nat'l Communs., Inc.*,

339 F.3d 376, 385 (5th Cir. 2003) (internal quotations omitted).  Any employer action that would be "materially adverse to a reasonable employee or job applicant" satisfies the "adverse employment action" requirement.  *Burlington Northern & Santa Fe R.R. Co. v. White*, 126 S.Ct. 2405, 2409  (2006).

Jones argues that, after she complained of sexual harassment by Davis in November and December 2005 and January 2006, Superior retaliated against her by promoting her to lead officer, by trying to fail her when she was qualifying at the gun range, and, finally, by terminating her in October 2006.  The Court assumes *arguendo* that Jones has made out her *prima facie* case.  The Court decides this case on the issue of whether Superior's proffered legitimate non-discriminatory reason was a pretext for retaliation, with the burden of proof resting on Jones.

When the essential facts asserted by each of the parties are not in dispute, the final shifting to the plaintiff may be expressed more appropriately as one of showing that "but for" the protected activity, the termination would not have occurred, notwithstanding the other reasons advanced by the defendant. *McMillan v. Rust College, Inc.,*710 F.2d 1112, 1116 (5th Cir. 1983). To defeat a motion for summary judgment or a motion for judgment as a matter of law, a Title VII plaintiff, like plaintiffs in any other civil case, must show a "conflict in substantial evidence' on this ultimate issue. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (en banc)). Evidence is "substantial" if it is "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co.*, 411 F.2d at 374. We must thus determine whether reasonable and fair-minded persons could conclude from the

summary judgment evidence that Superior would not have terminated Jones, and taken the other allegedly retaliatory actions, "but for" her activities protected by Title VII.

Jones claims that Superior retaliated against her complaints of sexual harassment by 'setting her up' as lead officer so they could find fault and terminate her.  As discussed above, Jones herself admits that it was the Federal Protection Service who promoted Jones to lead officer.  Therefore this could not have been an action of retaliation by Superior.

Jones also alleges that Superior tried to use qualification at the gun range to terminate her as retaliation for her sexual harassment complaint.  According to Jones' affidavit, Hammond failed her on the gun range and then instructed her she was terminated as a result. Doc. 19 Exh. 16 at 3.  Jones was preparing to hand in her equipment when an unnamed 'company representative' called and re-scheduled her for a second exam.  *Id*.  This time, on her first attempt, she passed.  *Id*.  Jones alleges that Hammond intentionally mis-counted the shots on her first exam to fail her and discharge her.  *Id*.  Jones also points out that she succeeded with ease on her second exam, as it only took one attempt, which, she argues, strengthens the inference that Hammond must have been deliberately mis-counting the shots on her first exam.

Here, Jones fails to raise a genuine issue of material fact as to whether Superior was retaliating.  Superior was required to ensure that all of their guards entering a federal contract were qualified on the gun range.  Superior gave Jones an extra opportunity to qualify, and she succeeded.  If anything, the evidence suggests Superior acted with more consideration towards Jones, rather than less.

Lastly, Jones argues she was terminated in October 2006 because she complained of sexual harassment in November and December 2005 and January 2006.  Jones contends that the close proximity of her complaints to her employment termination are in her favor, especially

combined with what she argues was a pattern of behavior by Superior in the intervening time – by promoting her and by failing her at the gun range.  As explained above, neither of these two actions involved retaliation by Superior.  Consequently, the Court does not subscribe to the 'pattern' theory.  Nor does the Court find that the nine months that elapsed is a short enough time between the complaints and the termination to indicate that Superior was motivated by a retaliatory animus.

Most crucial to the Court's determination that a retaliatory animus is lacking, is the intervening event that severs any causal link between Jones' allegations and her discharge. On October 17, 2006, Bass, the new Security Manager, on behalf of Federal Protection Service, sent a fax to Hammond asking that Jones be removed from the FEMA building.   Doc. 19, Exh. 7 at ¶12; Doc. 12 Exh.6 at 1.  Bass had warned Jones not to abandon her post without securing a replacement on several occasions and Jones had failed to take heed.  Doc. 12 Exh.6 at 1.  This negative assessment of Jones' performance as an employee, coming as it did from a 'neutral arbiter' is highly persuasive evidence that the reason for terminating Jones was non-retaliatory. Furthermore, the Federal Protection Service maintained significant influence over Superior's management decisions because it oversaw so many critical contracts with Superior. Thus, again, this provides strong evidence that Bass' fax was no convenient 'cover' for Superior to retaliate against Jones.[2]

Jones argues that Bass' fax is not a genuine fax from Federal Protection Service. She does not, however, provide anything but the flimsiest of circumstantial evidence in support. Jones simply argues Bass' fax seemed suspicious because it was addressed "To Whom It May

---

[2]     Further evidence that Superior's decision to terminate Jones is non-retaliatory is provided by the complaints about Jones coming from Bass' predecessor as Security Manager.  McAllister complained to Hammond about Jones' poor performance and Hammond stated that this played a role in Superior's decision to terminate Jones.

Concern" while Bass had already met Hammond, President of Superior, to whom the fax was sent. The Court finds this argument entirely unpersuasive especially in light of the fact that Jones has had the opportunity to depose Bass.

Thus, Jones fails to meet her burden of proof in demonstrating there is a "substantial conflict in the evidence" regarding whether Jones' termination would not have occurred "but for" protected activity.  Consequently, the Court grants defendant Superior's motion for summary judgment on Jones' retaliation claim.


**IV.**          **Conclusion**

Accordingly, it is hereby

ORDERED that summary judgment in favor of the defendant Superior Protection Services as to the gender discrimination claim is GRANTED, and further, it is hereby

ORDERED that summary judgment in favor of defendant Superior Protection Services as to the sexual harassment claim is GRANTED, and further, it is hereby

ORDERED that summary judgment in favor of defendant Superior Protection Services as to the retaliation claim is GRANTED.

SIGNED at Houston, Texas, this 9th day of February, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE